For the proper determination of the question, whether the defendant's election to the office of colonel is legal and valid, it is necessary to refer particularly to certain provisions of the general law providing for the enrollment of the militia and the organization of uniform corps and the discipline of the military forces of the State, passed April 17, 1854 (ch. 398); the act in relation to the first division and fifth brigade of the New York State militia, passed April 14, 1855 (ch. 536); and the act to improve the discipline and promote the efficiency of the military forces of this State, passed April 8, 1858 (ch. 129).
By the general law of 1854 (§ 1, tit. 9), the commander-in-chief was authorized to establish and prescribe such rules, regulations, forms and precedents as he should deem proper for the use and government of the military forces of this State, and to carry into full effect the provisions of that act. Such rules, regulations, forms and precedents were to be published in orders by the Adjutant-General, and from time to time distributed *Page 55 
to the commissioned officers of the State. The commander-in-chief, in pursuance of the authority so conferred on him, established and prescribed certain rules and regulations, which, on the 6th of April, 1858, were promulgated and published by the Adjutant-General, in a general order of that date, and were subsequently, by the 14th section of said act of April 8, 1858, made "part of the acts for the government of the military forces." It is provided by section 693 of those rules and regulations, that, "to be eligible to election or appointment to office in the military forces of this State, the person must be a white male citizen of the United States, of the age of eighteen years or upwards, and a resident of the proper military district, city or village, agreeably to law;" and by the previous section (§ 692), it is declared that "the election or appointment of an ineligible person is entirely void, and he is not entitled to be commissioned." These provisions were in full force at the time of the defendant's election. It then becomes material to inquire whether he was "a resident of the proper military district, city or village, agreeably to law." By the general law (tit. 4, § 3), it was enacted that the division, brigade, regimental and company districts, as then organized, should continue to be and remain as the military districts of the State, subject, however, to such alterations or consolidations as the commander-in-chief should, from time to time, see fit to make; and, by section 20 of the same title, it is provided that "all commissioned officers, residing in any city or incorporated village in this State, shall be deemed to be within the bounds of their respective commands, providing any part of the military district to which they properly belong shall be located within such city or village." It is a conceded fact, in this case, that the first regimental district, at the time of the defendant's election to the office of colonel, comprised the first and second wards of the city of New York, and that he, at that time, was not a resident within either of those wards. Such non-residence, however, would not have made him ineligible if he had resided in any part of that city, inasmuch as that military district was located therein, and he would then have been a resident *Page 56 
of the proper military bounds or territory prescribed by section 693 of the regulations referred to. The residence required, as a compliance with that regulation, must be either within a military district as specifically defined and designated, for which an election is to be held, or within a city or village in which the district, or a part thereof, is situated, although such residence is not within the territorial bounds of the district itself. This construction is in harmony with, and gives effect to, the provision of section 20 above cited, to which, in my opinion, reference was had in framing and prescribing that regulation. The defendant, however, was not a resident of the city of New York, and, consequently, was not eligible to the office to which he was chosen, unless the provisions to which I shall now refer have made him so. It is provided by those regulations (§ 702), that "commissioned officers will be considered as having removed out of the bounds of their commands and vacated their offices (unless otherwise provided by law), under the following circumstances, viz.: major-generals and their staffs, on removing beyond the bounds of their respective divisions; brigadier-generals and their staffs, on removing beyond the bounds of their brigades; field-officers and regimental staff, on removing beyond the bounds of their regiment; company officers, on removing beyond the bounds of their company, except when the company is made up from the different districts, and then, upon removing from the regimental district;" and it is declared, by section 65 of the act in relation to the first division and fifth brigade of the New York State militia, passed April 14, 1855, before referred to, that "any officer, non-commissioned officer, musician, or uniformed private, who may change his residence, from within the bounds of said division into any adjacent county, or from within any county adjacent into the said division district, shall not thereby vacate his office or post; but he shall be held to duty in the division, brigade, regiment, troop, or company to which he was attached at the time of such change of residence, and he shall be subject to duty therein, and shall be entitled to all privileges, immunities and exemptions allowed by law, and shall be *Page 57 
liable to fines and penalties and the collection of them in the same manner as if such change of residence had not taken place." It is claimed by the defendant that the effect of these provisions, when a commissioned officer in that division removes into an adjacent county, is, not only that he retains his office or post, but also that he is not considered as having removed out of the bounds of his command. That position cannot be maintained. It is true that an officer, by such change of residence, does not vacate his office or post, but, on the contrary, he is held to duty, and is entitled to all the privileges, immunities and exemptions allowed by law, in the same manner as if such change of residence had not taken place. Such is the evident meaning of section 65; but no color is thereby given for the construction that he is still to be considered as resident within the bounds of his command. It was doubtless understood, when that section was enacted, that changes to and from the bounds of the first division district and the counties adjacent thereto were frequent, and it was apparent that such changes, if permitted to produce a vacancy and an exemption from duty in the military body from which the removal was made, would seriously impair its efficiency. That result was, therefore, avoided by declaring that such change did not relieve from the duty which the office or post then held enjoined, nor take away the privileges, immunities and exemptions which the performance of such duty conferred. The provision, however, related only to the duty or post then held, and the privileges, immunities and exemptions then allowed by law. While, therefore, the removal of the defendant did not forfeit or vacate his office of staff officer, he did not, by the reservation of the right to hold it and the privileges appertaining thereto, also acquire the right of an election or appointment to another office, or any new right; and he could not be held to duty in any other office or post than that then held by him. It has been suggested that one of the privileges reserved was the privilege of promotion. That, in my opinion, is a misapplication of the term. The privileges to which the party is entitled are stated to be those "allowed by law:" they are such as *Page 58 
can be claimed of right, and are not dependent on the favor or will of others. Many privileges, immunities and exemptions are given and granted to the members of the first division, by the provisions of the law under which it was organized. It is to such that a person, who continues to serve after a change of residence, shall be entitled, and to such only. This is the fair and ordinary meaning of the language used; and that it was intended to be so understood is apparent from the provisions of section 86 of the same act, which provides that the fifth brigade district of the militia of this State "shall possess all the privileges and exemptions, and be subject to all the duties and service, granted and imposed to and upon the first military division;" showing that privileges and exemptions previously specified were contemplated.
The preceding views lead us to the conclusion that the defendant was, after his removal to Queens county, ineligible to the office of colonel to which he was chosen.
The judgment of the Supreme Court must, therefore, be affirmed.
COMSTOCK, Ch. J., DAVIES, JAMES, and HOYT, Js., concurred.